SAYRE *vs.* TOWNSENDS.

A *resulting trust* cannot be claimed by a party, who pays a *part* only of the consideration on the purchase of land conveyed to another, unless it be some *definite part* of the whole consideration, as *one third*, or *one half*, or the like.

Whether a party who obtains an equitable interest in lands conveyed to another, by paying an *aliquot* part, or even the *whole* consideration, can set up the same as a *defence at law* against the legal title, *quere.*

Where a party is entitled to a deed of lands, upon the payment of a specified sum, and a stranger without his knowledge, makes the payment, procures the deed to be executed, and takes it into his possession—whether it can be adjudged in such case that there has been such a *delivery* of the deed as to pass the title to the grantee, *quere.*

Where in submitting a cause to a jury, the judge instructed them that they may find a verdict for the defendant upon either of two distinct grounds, and the charge upon one of the questions is erroneous in point of law, a a verdict for the defendant will be set aside, as for aught appearing it may be based on untenable ground.

THIS was an action of *ejectment,* tried at the Orange circuit in September, 1834, before the Hon. CHARLES H. RUGGLES, one of the circuit judges.

The plaintiff produced in evidence an act of the legislature of this state, passed 28th March,1800, authorizing the surveyor general to grant to the settlers upon a certain tract of land in Orange county,called *Wawayanda,* or the *Jersey gore,* their several possessions, with such other vacant lands in the same tract, so that each individual should not have more than 400 acres, nor less than 100, upon paying into the treasury, or securing to be paid 25 cents per acre. *Samuel Ketchum* was a settler upon the tract, and one of the petitioners for the act passed by the legislature. On the 23d January, 1801, a deed was executed by the surveyor general, conveying to *Ketchum* two parcels of the above tract, one containing 100 acres, and the other 88 acres, stated in the deed to have been executed *in pursuance of the above act* of the legislature, and in consideration of $47 to him in hand paid by Ketchum. The deed was proved in the usual form, six days after its date, before an officer authorized to take the proof of deeds, by one of the subscribing witnesses. In 1819, *Ketchum* was discharged as an

insolvent debtor, under the *insolvency acts*, and *Sayre* was appointed his *assignee*. In 1832, Sayre, as such assignee, was in possession of an iron ore bed, on the 100 acre lot, and worked the same. He was forcibly dispossessed by P. Townsend and P. Townsend jun., and in January, 1833, commenced this suit against them, and also against W. Townsend, whom he supposed claimed title to the premises. On the trial of the cause, the plaintiff, under a notice given for that purpose, called on the defendants to produce the deed from the surveyor general to Ketchum, which he alleged was in the possession of the defendants. The defendants refusing to produce it, the plaintiff proved that since the commencement of this suit, his attorney had been furnished with the deed by the attorney of the defendants, from which a copy had been taken; which *copy* was received in evidence by the judge, and was of the purport as above stated. The defendant's counsel objected to the deed being read, insisting that it ought not to be received in evidence, without proof of a *delivery* thereof to *Ketchum;* which objection was overruled. The plaintiff rested.

W. Townsend, one of the defendants, was acquitted by the jury on the trial of the cause, under the direction of the judge, there being no evidence against him, for the purpose of enabling him to be sworn as a witness for the other defendants. He testified that in 1800 he was a member of a company who carried on the business of working iron ore beds in the county of Orange, of which the defendant, Peter Townsend, was also a member; that the company employed a Mr. Marvin to purchase the surplus rights of those who had petitioned the legislature for the act passed in 1800, and that he *understood* from Marvin that he had bought for the company the 100 acres in question from *Ketchum,* being a part of Ketchum's surplus right. He obtained the deed executed by the surveyor general to Ketchum, from Marvin, shortly after its date, and it had ever since been in his possession. In reference to the proof of the payment of money to Marvin, to enable him to obtain the deed from the surveyor general, he testified that it was paid by the correspondents of the company at Albany, although he could not state the precise amount paid to Marvin, to advance for the deed in question, nor could he testify

to its actual payment. Marvin is dead. He testified that he occupied the 100 acre lot many years, and that the company held the whole of the 88 acre lot under the surveyor general's deed from the time it was received; that he sold out his interest in the premises seven years before the trial. The defendants also gave evidence for the purpose of establishing an *adverse possession*, to resist which the plaintiff was proceeding to examine witnesses, when he was interrupted by the judge, who ruled that as the case stood before him the question of adverse possession could not arise.

The judge charged the jury, that if the Townsends, without having purchased Ketchum's right, and without his knowledge, had paid the consideration of the land to the state, and procured the deed from the surveyor-general, it would not vest a legal title in Ketchum, until a delivery of the deed to him ; that if in fact they paid the purchase money with the assent of Ketchum, a *resulting trust* was thereby created, and the land became the property of the Townsends notwithstanding the deed was in Ketchum's name, and if they found that the money was so paid by them, the verdict ought to be for the defendants. The plaintiff excepted to the charge, and the jury found for the defendants. The plaintiff asks for a new trial.

*A. Tabor*, for the plaintiff.

*S. Stevens*, for the defendants.

*By the Court*, BRONSON, J. In the late revision of the laws, *resulting trusts* were in most cases abolished. 1 *R. S.* 728, §51, 53. At the time, however, when the deed in this case was executed, if the *Townsends* had paid the *whole* consideration, and the intention between them and *Ketchum* was that the grant should enure to their benefit, there can be no doubt that a trust would have resulted in their favor. Whether such an interest can be set up at law as a defence in the action of ejectment, need not now be considered. Conceding the general doctrine on which the cause was mainly placed

ALBANY,
Oct. 1836.

Sayre
v.
Townsend.

by the circuit judge, there was still, I think, an insuperable difficulty in the way of the defence. There was no pretence that the *Townsends* had paid any thing beyond the two shillings, per acre, or $47, mentioned in the surveyor general's deed. This was but a *part*, and that not an *aliquot* part of the consideration for the grant. *Ketchum* had an interest in the land anterior to, and independent of the deed. He had settled on, and improved a part of the land ; he was one of the petitioners for the favor or bounty of the legislature; and the act passed on that occasion had secured to him a grant of the lands he had improved, and other vacant lands, not exceeding 400 acres in all, at a consideration little more than nominal. The 100 acre lot was a part of what was called his surplus right. That the grants authorized by this statute were intended as a partial gratuity, or special favour to the petitioners, cannot be doubted. The act did not provide in general terms for a sale of the land ; but for grants to particular individuals. That this provision was beneficial to the applicants must be evident, from the consideration that they asked it as a favor from the legislature. And it is further established by the fact that commissioners were to be appointed to adjust disputes which might arise between the petitioners respecting the extent of their possessions or improvements. This would have been a useless provision, if the act had not conferred important advantages on the persons named in it. It is impossible to say what proportion the 25 cents per acre paid into the treasury by the *Townsends* bore to the privilege conferred on *Ketchum* by the statute. But the money was no more the property of the one than the privilege was the right of the other. Both taken together, formed the consideration of the grant. *Crop* v. *Norton*, 2 *Atk.* 74.

It may well be doubted whether any trust whatever, or to any extent, resulted to those who paid the money into the state treasury. If it was paid with the assent of *Ketchum*, the *Townsends* should probably be regarded as creditors for the amount, rather than as having acquired any interest in the land. A trust will not result to one who pays a part only of the consideration on the purchase of land conveyed to another, unless it be some definite part of the whole con-

sideration, as one third, one half, or the like. *White* v. *Carpenter*, 2 *Paige*, 238, 241. And if an *aliquot* part or the whole consideration had been paid by the *Townsends*, it is questionable whether the equitable interest which they thus acquired could be set up at law as a defence against the legal title. *Jackson* v. *Van Slyck*, 8 *Johns. R.* 487. But that question does not arise in this case. The judge charged the jury, in substance, that if the *Townsends* paid the $47 to the state with the assent of *Ketchum*, a resulting trust was created, and the land became theirs notwithstanding the deed was given to another. In this I think he erred. As the plaintiff is entitled to a new trial on this ground, it is unnecessary to consider the other questions discussed by his counsel on the argument.

The counsel for the defendants urged several considerations in favor of sustaining the verdict in case the court should be against them on the question which has been examined. It was said that the plaintiff was barred by an adverse possession in the defendants and those under whom they hold. It is a sufficient answer to this suggestion, that when the plaintiff was proceeding with his proofs to rebut the evidence of an adverse holding on the part of the defendants, the judge interfered and informed the counsel that such proofs would be useless, for there could be no question of adverse possession raised, as the case then stood. " Whereupon the counsel for the plaintiff stopped the inquiry."

It was also urged, that the deed of the surveyor general had never been delivered to *Ketchum*. There was certainly some difficulty in the plaintiff's case, in relation to the delivery of the deed; and if the judge, in his charge, had placed the cause upon this single ground, it may be that a verdict for the defendants would not have been disturbed. But where, as in this instance, the case is submitted to the jury to find their verdict for one party upon either of two distinct grounds, and the instruction upon one of the questions is erroneous in point of law, the verdict cannot be sustained. If the jury had been further instructed, in the event of finding for the defendants, to say on which ground the verdict rested, and they had answered that there was no delivery of the deed, the court would have been relieved from the necessity of examining the other

question. But for aught that appears, the verdict in this case may have proceeded on the untenable ground that there was a resulting trust, and such an one as would defeat the legal title.

It was said also, that under the circumstances of this case a conveyance from *Ketchum* to the *Townsends* might be presumed. There is no doubt that an equitable title may sometimes be assisted at law, by allowing the presumption that there has been a conveyance of the legal estate; but it does not appear that any such question was raised on the trial. On the contrary, the cause was submitted to the jury on other grounds.

New trial granted.