## JOSE TEODORO ROBLES *v.* JEREMIAH CLARKE.

RESULTING TRUST.—R. was the owner of promissory notes overdue, and desired to have the same collected. Having no means to pay attorney's fees and costs, he arranged with C., an attorney, to take the notes for collection. By the arrangement C. was to furnish money to pay costs and disbursements, and have the notes indorsed to him, and bring suit in his own name, and be reimbursed, both for his fees as attorney and for advances by him made, out of the proceeds when collected. R. then indorsed the notes to C., who gave him a receipt as attorney, stating that he received the notes for collection. C. brought suit in his own name, obtained judgment, and had an execution issued, but the same was returned unsatisfied. C. then made an arrangement with a brother of one of the defendants in the judgment, by which the brother conveyed to C. a tract of land, and C. assigned him the judgment, and paid him a sum of money beside. C. was solvent and willing to pay R. whatever was due him on a settlement. *Held,* that there was no resulting trust in favor of R., and that C. did not hold the land conveyed to him in trust for R., and that R. was only entitled to recover the money due him on a fair settlement.

RESULTING TRUST.—It seems that when the portion of the purchase money furnished by the party claiming the benefit of a resulting trust, is not an aliquot portion of the whole, there is no resulting trust corresponding with the portion of the purchase money so furnished.

DECREE COMPELLING CESTUI QUE TO CONVEY TO TRUSTEE.—A decree establishing a trust in favor of the *cestui que,* and making allowances to the trustee for moneys by him advanced in and about the trust estate, and directing the trustee to execute a conveyance of the trust estate to the *cestui que* before payment of the moneys advanced by the trustee, is erroneous. The payment of the money should be made a condition precedent to the conveyance.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

The facts are stated in the opinion of the Court.

*J. Clarke,* Appellant in *pro. per.*

The defendant having paid the cash consideration of eight hundred dollars of his own money, (as found by the Court)—even conceding that the judgment was held wholly in trust for the plaintiff—the right of the defendant in equity would be to follow the land, not for the purpose of getting a share of it corresponding to the amount of the judgment, relative *to the* eight hundred dollars; nor, secondly, to get the whole of it by paying defendant the eight hundred dollars (as the Judge below, in effect, decides)—but simply to have *the amount of*

*the judgment declared a lien upon the land, and to* realize it, if necessary, by a judicial sale of the latter.

This remedy the plaintiff has no occasion to pursue; for it is not pretended that the defendant has not, at all times, been willing to account to plaintiff for the amount of the judgment as so much cash.

Greenleaf's Cruise on Real Property, 391 : " Lord Hardwick has said that when the whole consideration moved from one, and the conveyance is made to another, there is a resulting trust for the person who paid the consideration; but he never knew it when the consideration moved from several persons."

In *Drop* v. *Norton.* 2 Atkins, 74, the Court say : " When the purchase money is paid by one, and the legal estate is in another, this, by operation of law, is a resulting trust for the person who paid the money; and the doctrine is very right, when the whole purchase money is paid by one person. But then the whole value of the purchase is not paid by Colonel Norton, for the fifteen hundred pounds is only part of the consideration. I am of opinion that there is no resulting trust."

Hovenden on Frauds, Vol. I, p. 471, states that " although personalty misapplied by a trustee may be traced *into* the purchase of land, it does not follow that in all cases the land purchased must belong to the *cestui que trust* of the money with which it was purchased. The personal estate may be *chargable upon* and demandable out of the real estate so bought, but it may only constitute a *lien* upon, not give title to the estate itself. *To this limited extent the equity of a case must plainly be confined when an estate shall appear to have been purchased partly with his own and partly with trust moneys,*" and he cites *Lewis* v. *Maddox,* 17 Ves. 58 ; *Savage* v. *Carroll,* 1 Ba. & Beat. 285 ; see *Myers* v. *Myers,* 2 McCord's Ch. R. 265.

*S. O. Houghton,* for Respondent.

From the time Clarke obtained the conveyance from Vallejo, he claimed to be the sole owner of the premises, and denied that Robles had any rights therein. This dispenses with the necessity for a demand. The rule in chancery is, if the

defendant denies the right of the plaintiff, he cannot insist in his defense that there was no demand. (*Ayer* v. *Ayer*, 16 Pick. 335.)

The appellant contends that because only a part of the consideration of the conveyance from Vallejo to Clarke was paid with property of Robles, no trust could result to him, and that the remedy of Robles is limited to having the amount of the judgment declared a lien on the land conveyed by Vallejo to Clarke.

In support of this position he cites the case of *Wallace* v. *Duffield*, 2 Sergt. & Rawle, 521, and quotes from the opinion of Mr. Justice Gibson. There are three opinions in that case, and the point there decided does not sustain appellant's views, but is an authority against him.

The rule as declared by Mr. Justice Gibson in that case, has never been followed, and the same Judge, then Chief Justice, in delivering the opinion of the Court in *Kissler* v. *Kissler*, 2 Watts, 324, after discussing the question, and expressing some doubt of the correctness of the rule, declares it settled by our Courts " that a purchase with trust money in whole or in part, gives the owner of the money a correspondent ownership of the land," and cites as authorities *Duffield* v. *Wallace*, (one of the cases relied upon by appellant as supporting his position,) and *Gregory* v. *Setter*, 1 Dall, 139, and *German* v. *Gabbald*, 3 Binn. 302.

The quotation made from Hovenden on Frauds, is not sustained by the cases cited in support of the rule as there stated.

*Lewis* v. *Maddox* is a case of a marriage contract, providing that all the personal estate acquired or possessed by the husband, should at his death, in case she survived him, go to his wife. During the marriage he purchased an estate, partly with his own funds and partly with funds borrowed by him, and it was held that the amount of his own money used in that purchase could be followed into the land. It was not sought to take the land instead of the money.

*Myers* v. *Myers*, 2 McCord's Ch. R. 265, also cited as sup-

porting the same principle, is a case where an executor had mingled trust funds with his own in the purchase of property.

In the opinion of the Court occurs the following language : "And there is no rule of equity better settled than that a trustee shall not be permitted to employ the trust fund for his own benefit; all purchases, therefore, made with the funds of the trust estate, will be considered for the benefit of the *cestui que trust.* That principle is exemplified in numerous cases where it has been held that executors, *attorneys,* and trustees, shall not purchase at their own sales, nor of their *cestui que trusts,* clients, etc. All persons acting in such representative capacities are considered in equity as trustees, and are governed by the same rules ; and it is no answer on the part of the defendant that he has so mixed up the two funds together that he cannot distinguish one from the other. A person may, sometimes, by mixing the estate of another with his own, subject himself to the loss of both, for it is his own fault that they have not been kept separate."

It is submitted that the principle contended for by the appellant is not supported by any authority cited by him, or indeed by any other.

The right of Robles is not limited to following his property into the land. He has his election to hold his trustee personally liable, or he may follow the fund belonging to him into the land, and have it raised out of it by a sale thereof, or he may claim the land itself.

This rule is well settled, and is supported by numerous authorities.

" In all cases where trust funds have been misemployed or moneys placed in the hands of others in a fiduciary capacity have been invested in property without the consent of the beneficiary, a trust results, unless the *cestui que trust* elects to take the money instead thereof." (Tiffany & Bullard on Trusts and Trustees, 33, 34, 480 ; *Seaman* v. *Cook,* 14 Ill. 505 ; *Torry* v. *Bank of Orleans,* 9 Paige, 663 ; *Van Epps* v. *Van Epps,* Idem, 237, 241 ; *Hawley* v. *Cramer,* 4 Cowen, 736 ; *Quackenbush* v. *Seaman,* 9 Paige, 334.)

Appellant in reply.

Plaintiff's counsel makes a mistake as to *the nature of the trust* with which defendant was invested.   It was not a trust of *land*, to be rented, used, or managed.   It was a trust of a *judgment*, (strictly, of part of a judgment, but the principle is the same,) to be *turned into money*, and nothing else, and this whether by acknowledging satisfaction of it if paid by the judgment debtors, or by assigning it if assumed by one liable, or supposing himself liable, as surety.   Surely, the judgment was not intended to be *kept*, to be held as an *investment*, as so much desirable *property*, which it would be a fraud, a breach of trust, to part with for money !

By the Court, SAWYER, J.

There is no conflict in the testimony bearing upon most of the controlling issues presented by the pleadings in this case, and the findings must depend mainly upon the construction put upon the evidence.   Some of the findings are, in our judgment, clearly not in accordance with the evidence ; some embrace only a part of the facts, and require qualification, and some issues presented by the answer, having an important bearing on the rights of the parties, should, under the evidence, have been found for the defendant, but do not appear to have been passed upon by the Court.

The following are the leading facts found by the Court, or when not found by the Court, as herein stated, or not passed upon at all, to our minds clearly established by uncontradicted evidence.

On the second of April, 1858, the plaintiff executed to Antonio Larrain a conveyance, purporting to convey an undivided half of a tract of land called Santa Rita, or Rincon de San Francisquito, excepting a designated tract of fifty acres, reserved to the grantor, for the consideration of two thousand dollars, receiving in payment six hundred dollars in cash and two notes of Larrain, guaranteed by Salvador Vallejo—one

41

for four hundred dollars, payable in thirty days, and one for one thousand dollars, payable in six months. There are covenants of warranty in the deed, and although the granting part purports to convey an undivided half, there is a provision that "the covenants of this deed shall not extend to deeds which from time to time have been made of several and separate parcels of said land to purchasers thereof, but only to said entire interest and the residue or remainder thereof after such sales," etc., thereby showing that lands had been conveyed, and that a full undivided half did not pass, as purported in the granting clause; and other evidence, in regard to which, however, there is some question as to its admissibility, shows that a very considerable portion of said rancho had been thus conveyed. According to the testimony of Mrs. Larrain, widow of Antonio, which is uncontradicted, Robles first made the agreement with Mariano G. Vallejo to sell to him; then Vallejo requested Larrain to buy it and take the deed in his name, but for the benefit of said M. G. Vallejo, the real party in interest. M. G. Vallejo was present at the time and furnished the money to make the cash payment, and the notes were given for the balance. At the time the deed was made, M. G. Vallejo handed the money to the witness, Mrs. Larrain, and she gave it to Robles. On the same day Larrain conveyed it to said M. G. Vallejo. The notes were executed by Antonio Larrain and guaranteed by Salvador Vallejo, a brother of M. G. Vallejo, the real purchaser, whose name does not appear on the notes. The notes were not paid when due, and plaintiff, Robles, being without funds to pay costs of suit, and requiring some small advances for personal expenses, desired defendant, Clarke, to make the advance of cash and the costs, and collect the notes, taking his advances and fees for services in collecting out of the proceeds. Defendant consented to do so, on condition that plaintiff would assign the notes to him, to enable him to control them, and thereby secure his advances and compensation. Thereupon plaintiff indorsed the notes to defendant for this purpose, defendant giving him an acknowledgment in writing that the notes were received for

Robles *v.* Clarke.

collection. The defendant at the same time advanced plaintiff thirty-five dollars, cash, for his personal use, taking a written acknowledgment for the money so advanced. Suit was immediately brought by defendant in his own name against the maker and guarantor, defendant advancing the necessary costs. The suit was defended by able counsel, on the ground that there was a breach of covenants of warranty in Robles' conveyance; but judgment was finally entered in favor of plaintiff for one thousand three hundred and eighty-two dollars and sixty-nine cents debt, and thirteen dollars and fifty cents costs—a small payment having been made before the notes came into the defendant's possession. For his services in prosecuting this suit under the circumstances, the Court found, and the testimony justified the finding, that defendant was entitled to a fee of five hundred dollars, which, added to his cash advances under the arrrangement with plaintiff, entitled him to the sum of five hundred and forty-eight dollars and fifty cents out of the judgment. Execution was taken out upon the judgment and sent to Napa County, where it was supposed that Salvador Vallejo's property, if he had any subject to execution, was situated; but it was returned unsatisfied. Larrain was totally insolvent, and the testimony renders it highly probable, if not entirely certain, that nothing could be made out of Salvador Vallejo. The prospect of making the money out of the judgment debtors appearing desperate, as it manifestly was, and having reason to suppose that the purchase was made for M. G. Vallejo, the defendant obtained an interview with him, and sought to induce him to assume and pay the judgment, at the same time insisting that he (M. G. Vallejo) was personally liable as principal and the land subject to a vendor's lien. Vallejo alleged that he had paid Larrain the full value of the property in cash, and denied that there was any personal liability or any lien on the land. There was a mortgage on the premises originally for five thousand five hundred dollars, drawing interest at four per cent per month, to be compounded monthly if not paid, given to one Goodman, but then held by S. C. Hastings; but what

amount was unpaid at this time does not appear. The title was still unconfirmed by the authorities of the United States Government, but a proceeding for confirmation was pending, the claimants being represented by the defendant as attorney. The boundaries were still indefinite and undetermined, and the title and condition of the land in these respects were unsettled and unsatisfactory. After a great deal of negotiation with M. G. Vallejo, the latter, expressing regrets that he had purchased in the present condition of things and a desire to protect his brother Salvador in respect to the judgment, proposed to sell and convey his interest in the premises to defendant for the said judgment and eight hundred dollars cash. The defendant, acting upon his own judgment and responsibility, and without consulting plaintiff, concluded to make the purchase on his own account, and assume himself the liability to pay plaintiff the amount of the judgment coming to him, and to account to him for it as so much cash collected. The proposition was accepted, the defendant paid out of his own funds the eight hundred dollars cash, and assigned to Vallejo the judgment; and Vallejo, in consideration thereof, on the 29th of March, 1859, conveyed the premises to defendant. There is no pretense that the defendant was not at the time, or that he has not been at all times since, a man of ample means and abundantly able to pay in cash, without resorting to the property purchased, any amount that may be due to plaintiff on this judgment, nor is there any evidence tending to show that he has not been at all times ready and willing to account with plaintiff and pay him any sum of money that may have been due him; on the contrary, the defendant testifies that he has at all times been, and that he now is ready and willing to account for and pay any sum that may be due to plaintiff. From the time of this conveyance the defendant has claimed to be the owner of the whole of said premises.

The defendant had before this time acquired large interests in said rancho through mesne conveyances from plaintiff, executed prior to the conveyance to Larrain; and subsequent to said purchase he acquired other interests therein. On the 8th

Robles *v.* Clarke.

of October, 1859, long subsequent to said conveyance of Vallejo to defendant, S. C. Hastings, then the holder of said mortgage to Goodman, covering said premises and other lands, commenced a suit to foreclose the same, claiming in his complaint some nine thousand dollars to be due thereon.   On the 25th of May, 1860, more than a year after said conveyance from Vallejo to defendant, and at a time when said plaintiff had ceased to have any interest in said premises in dispute, unless he had an interest under said conveyance from Vallejo to defendant, said defendant, for the purpose of protecting his interests, procured from said Hastings an assignment to himself of said mortgage, for which he paid, out of his own funds, the sum of five hundred dollars.   Said defendant then amended the complaint and brought in other parties defendants, purchasers subsequent to said mortgage, and prosecuted said suit to a decree for his own benefit in the name of the said Hastings.   Said plaintiff appeared in said suit by other counsel, and litigated said action, setting up in said suit that defendant Clarke held as trustee for him.   Said defendant also filed a petition of intervention in said suit on his own behalf, and his interest in said suit appeared upon the record of said cause. After a long litigation, a decree was finally entered on the 4th of September, 1862, for a large sum of money.   An order of sale issued, and the interest of said Robles in said premises was sold to said defendant, and the amount of his bid credited on said judgment.

Since the sale from Vallejo to Clarke, a final confirmation of the said grant has been obtained, and several contests have occurred between the claimants under this grant, and the grantees of adjoining grants, as to the boundaries, in which said defendant intervened, claiming to act for his own interest, and by his efforts sought to enlarge the boundaries of said rancho by moving back the lines, as insisted upon by the adjoining claimants.   In resisting the encroachments of neighboring claimants, he incurred considerable expense in costs and disbursements, which were paid out of his own funds, and he performed a large amount of professional labor.   After most

of these results were accomplished, the plaintiff, for the first time, set up a claim that he was entitled to the sole benefit of the purchase made by defendant from Vallejo, and of all the increased value given to the property by the subsequent labor bestowed, and expenses incurred by the defendant in that behalf; but, so far as anything to the contrary is shown by the record, without ever offering to refund to defendant his advances, or compensate him for his various services.   To enforce this claim he brought the present action, wherein he asks a judgment to the effect that said premises are held by said defendant in trust for said plaintiff, and that defendant be adjudged to convey to said plaintiff said undivided half of said rancho conveyed to said defendant by said Vallejo.

The decree was for plaintiff, and defendant appeals.

The foregoing statement of facts is sufficient, and perhaps more than sufficient, to explain the grounds of our decision.

It is claimed by the plaintiff that there is on these facts a resulting trust in his favor.   The principle, supported by a number of authorities (2 Paige, 238; 13 Ill. 233; 30 Maine, 127; 14 Gray, 121; 15 Wend. 650; 1 Hov. Frauds, 471; 1 Ball and Beat. 284) that where the portion of the purchase money furnished by the party claiming the benefit of a trust is not an aliquot part of the whole, there is no resulting trust corresponding with the portion of the purchase money so paid, seems to be admitted by respondent; for it is insisted that where the party taking the deed in his own name wrongfully mingles the money of another with his own, in making the purchase, in such a manner that it cannot be distinguished, or does not constitute an aliquot part of the whole amount paid, then he must suffer the inconvenience, if any, and a trust results to the other party to the extent of the whole property purchased; and upon this principle the present judgment seems to be founded.

If there is a resulting trust to any extent in favor of the plaintiff in this case, it must depend upon the principle of that class of cases, where a party wrongfully purchases property in his own name, with funds in his hands held in a fiduciary

Robles v. Clarke.

capacity. The usual cases found in the books under this class are, such as where funds are placed in the hands of an agent for the purchase of property, or the purposes of trade, and he invests them in his own name; or where executors, guardians, and the like, who are charged with the management of funds belonging to others, invest them in their own name, and for objects not contemplated. In all such cases, the funds placed in the hands of the trustee have been misapplied, in violation of the duties of the trustee, and when the party in such cases violates the trust, and wrongfully purchases property for his own benefit, with the funds in his hands in a fiduciary character, he will not be permitted to enjoy the profits of a successful operation, wrongfully made at the risk of his *cestui que trust*. The principle is, that where funds are placed in the hands of a party for safe keeping, or to be employed for the advantage of the owner, it is the duty of the party accepting the confidence to do every reasonable thing in his power to accomplish in the most advantageous manner the object of the trust reposed in him. The general rule upon the subject is founded upon the moral obligation resting upon a party to refrain from placing himself in relations, which ordinarily excite a conflict between self-interest and integrity. In the class of cases referred to, where there is a breach of good faith, and a misapplication of the trust fund, a Court of equity will convert the party violating the confidence reposed in him into a trustee, whenever necessary to protect the interest of the confiding party, and do justice between them.

The question is, does the case under consideration fall within the principle? We think not. We have examined a large number of cases, and we do not find one that goes far enough, when carefully considered, to sustain the judgment in this case. The plaintiff has two notes which the maker and guarantor refuse to pay. Being without means to pay the costs of litigation, and in want of a small sum for his own purposes, he agrees with the defendant, an attorney pecuniarily responsible, to take the notes for collection, advance him

a small sum for his immediate wants, also the disbursements in the suit, and take his compensation and advances out of the money when collected; and to give the attorney the control of the notes he indorses them to him, thereby placing the legal title in him. The only object the plaintiff has, and the only purpose of the trust, so far as his own interest is concerned, is to convert the notes into money. The object of the trust was to realize the money, not to invest the proceeds in other property of any description whatever. The attorney, by making the advances and prosecuting the suit, also acquired an equitable interest in the proceeds of the note by the express understanding between them. The attorney prosecutes the suit, advancing the disbursements in addition to the small advances made for the personal convenience of the plaintiff. Judgment is finally obtained, execution issued and returned unsatisfied—the judgment debtors proving to be insolvent. The only hope remaining is that a vendor's lien may be enforced against the land which formed the consideration of the notes, said land being then in the hands of a third party. But the proof shows that the land was purchased not for the party taking the deed and making the notes, but for another party who advanced the cash payment and to whom it was conveyed the same day—that the plaintiff was present at the transaction and must have understood the facts—that he took the note of one party guaranteed by another, neither of whom was in fact interested in the purchase, instead of the notes of the real purchaser—and no fraud was alleged or claimed in the transaction. It is not at all certain that a vendor's lien could be maintained under such circumstances. A security is taken from parties known not to be interested in the purchase, and this is usually deemed to be a waiver of a vendor's lien. (*Baum* v. *Grigsby*, 21 Cal. 175.) But at best the question was doubtful, and to pursue the land would involve further expense and harassing litigation. At this stage, Vallejo offers to convey the premises to the defendant in consideration of an assignment of the judgment and the further sum of eight hundred dollars in cash, being two hundred dollars more than

was originally paid.  The object of the trust, so far as the plaintiff was concerned, was to realize his money, and the defendant having ample means of his own aside from the property in question to pay the amount, and having a large equitable interest in the judgment, concludes to take the risk, make the purchase on his own account, and account to plaintiff for his share of the judgment as so much cash collected, and closes the transaction in this way by advancing the eight hundred dollars out of his own funds, assigning the judgment, and taking a conveyance of the property.  The Judge finds that the defendant was entitled to have out of the judgment for his services and advances, five hundred and thirty-eight dollars and fifty cents, which, deducted from the amount of the judgment, one thousand three hundred and eighty-two dollars and sixty-four cents, leaves eight hundred and forty-four dollars and thirteen cents to be accounted for to plaintiff. The defendant paid cash, eight hundred dollars, making his amount put in, besides the sum due plaintiff, one thousand three hundred and thirty-eight dollars and fifty cents.  And subsequently defendant expended other sums and performed other labors in perfecting and protecting a title both embarrassed and encumbered in various ways.

What is there on the part of the defendant in this transaction that is objectionable on the score of the strictest principles of good morals, or in any respect inconsistent with his duty to his client?  Had he immediately tendered plaintiff in cash the balance credited to him, the most rigid casuist could find nothing in the transaction of which he could complain.  The defendant would have performed to its fullest extent the object of the trust.  Had the judgment been a lien on the property, and had he purchased it at a sale on the execution for a sum less than the amount coming to his client on the judgment, and sought to retain the benefit of the purchase for himself, his interest and his duty would have conflicted: for in that case it would have been his interest to obtain the land at as low a rate as possible, while it would have been his duty to get as much as possible out of the land, until sufficient should

be realized to liquidate the amount due to the client. But this was not his position. The chance for making the money on the judgment was desperate. An opportunity occurred wherein, by advancing a considerable sum of money himself and taking upon his own shoulders all the risks of a purchase of the lands, in the condition stated, upon which he had no judgment lien, he could secure his own interest in the judgment, and at the same time fulfil both the letter and spirit of his trust, and he embraced it. In this we can see no breach of duty, or misapplication of trust funds within the principle of any case that has been brought to our notice, unless the fact that the amount due plaintiff was not immediately tendered to him in cash by defendant changes the aspect of the case.

There is not the slightest evidence in the record that the defendant has ever to this day been called upon to account, or that he has not been both able and willing to pay over the entire amount due. On the contrary, the testimony shows that the defendant has been at all times, and that he now is ready and willing and able to account and pay over any sum that may be due.

The defendant claims, in his answer, that at the time this purchase was made, and at all times since, there were other sums of money due from plaintiff to defendant greater than the amount due on said judgment, and that upon a just accounting there would have been at all times a balance due from plaintiff to defendant. And there is enough in the record to render it highly probable, that at the time of the purchase of the land in question, plaintiff was indebted to defendant in other sums sufficient to absorb nearly all, if not all, of the said balance; as, for instance, the defendant alleges, among other things, as a counter claim in this action, that he holds a note executed by plaintiff to defendant for the sum of five hundred and seventy-six dollars, borrowed money, dated July 22, 1856, several years before the conveyance of said land, and that the whole of said sum and interest thereon still remains due and unpaid. The plaintiff demurred to this counter claim, on the ground that the cause of action appears to be barred by the Statute of

Limitations and had judgment on the demurrer.   If such was the condition of account between the parties at the time of the purchase from Vallejo, there can be no equitable ground for the claim set up by plaintiff in this action.

But, however this may be, we do not think the mere fact that no settlement of the matters between the parties, when defendant does not appear to have been called upon to account, is sufficient to show a breach of trust, and convert defendant into a trustee under the state of facts shown in this record.

The Court below found that defendant purchased the land and assigned the judgment referred to in fraud of the rights of plaintiff.   There is, to our minds, no testimony showing a fraud in fact, and we must therefore conclude that the learned Judge who tried the case considered the transaction, in view of the existing relations of the parties, as fraudulent in law. The question as to whether a transaction honest in itself, is or not, nevertheless, to be regarded as fraudulent in law, often depends upon nice distinctions; and when we consider the great mass of authorities upon the subject, not always consistent with each other, it is not surprising that errors frequently occur in the rulings of the Courts in the hurry of trials of cases like this at *nisi prius*.   We think the facts appearing in the record in this case do not show the transaction under consideration to be fraudulent in law, and that the Court erred in this finding.

In the purchase of the land we think the defendant acted in good faith, and not in violation of a trust.

Upon a careful consideration of all the circumstances under which this purchase was made, we are fully satisfied that it would not only not be equitable, but on the contrary grossly inequitable, to charge the defendant as trustee for the benefit of the plaintiff and compel a conveyance of the land.

The plaintiff, however, if there is anything due him, is entitled to a judgment for such amount, and to have it charged as a lien upon the land in controversy.   The state of the accounts between the parties was not ascertained on the for-

mer trial. For the purpose of ascertaining what amount, if any, is due from defendant to plaintiff, a new trial must be had. The views we have expressed are sufficient for the purposes of the decision, and to guide the Court below in its further proceedings.

There are several other questions, to some of which we will allude without discussing them.

Admitting that defendant is chargeable as a trustee and liable to be called upon to convey, it is evident that the decree, if its terms are complied with, would compel defendant to convey a much larger interest in the land than he acquired under the purchase from Vallejo.

The questions growing out of the proceedings under the assignment of the mortgage from Hastings to defendant we shall not discuss, for under the view we have taken, it is not necessary to determine whether a party charged as trustee *in invitum* can purchase for his own benefit an interest in the property adverse to that of the *cestui que trust.* The judgment, however, is erroneous in annulling the decree of foreclosure in the suit of *Hastings* v. *Robles et al.*, and directing that satisfaction of said judgment be entered of record. Such a judgment is entirely without the scope of the facts alleged in the complaint in this action. True, the defendant in his answer set up a title to the land in question, derived under those proceedings; but admitting that the proceedings were proven to be void or voidable on the ground of fraud or otherwise, the Court was not authorized to grant such affirmative relief in favor of the plaintiff. It may be questioned how far those proceedings can be attacked collaterally, even by way of rebutting a title set up under them, without filing a complaint to impeach directly and vacate the judgment on the ground of fraud. But there can be no doubt that the decree is erroneous in granting to the plaintiff affirmative relief in this action by annulling the judgment and ordering satisfaction to be entered. Such relief is entirely foreign to any case made by the allegations of the complaint.

Admitting the judgment to be right in other respects, it is

Robles *v.* Clarke.

erroneous in giving the plaintiff sixty days after defendant Clarke should make the conveyance under the judgment to pay the several sums found due to Clarke from plaintiff for the advances made by him on account of the lands in controversy. The payment of the money at some early day ought to have been made a condition precedent to the conveyance.

It follows from the views we have expressed that the judgment must be reversed and a new trial ordered.

Judgment reversed, and cause remanded for further proceedings, in accordance with the views expressed in this opinion.

Mr. Justice RHODES expressed no opinion.