By the Court, Jones, J.
The charge to the jury to find for the defendant if they found that there was an agreement made between Anthony and Houghton,-(C. W.) whereby this property was to be convéyed to Anthony and he was to release the Rhode Island premises, was clearly erroneous. It is charging as matter of law that the mere making *280 of the agreement in question transferred the legal title title to Anthony. Ho case that I have met with goes to this extent. The respondent does not claim such to he the law; but he says, that the judge, in making this charge is to be regarded as having assumed the facts that, in the event of the agreement having been made, the deed was either delivered to and accepted by Anthony prior to the recovery of the judgment, or that it was delivered before and accepted after, and that as matter of law, the acceptance related back to the delivery.
There is, however, nothing in his charge to indicate any such assumptions. On the contrary, it indicates on its face that in his view the case did not turn on the question of delivery and acceptance of the deed, but entirely on the bare question as to whether the agreement was made or not; he holding if it was made, that the title was out of the judgment debtor at the time of the recovery of the judgment; otherwise, if it was not made.
I fully concede the rule that if the judge in his charge assumes a fact to be proven, concerning which there is contradictory proof, or no proof at all, it is incumbent on counsel to call his attention to the matter, at the time, and this so that if it be a mere error the judge may correct it; but the assumption must be expressed in language. It would be pushing the rule too far, to suppose that counsel can look into the brain of the judge and ascertain what mental assumptions he has made, in order to arrive at a supposed conclusion.
I also fully concede the rule that if the judge omits to submit to the jury, questions of fact which should be submitted to them, counsel cannot on appeal take advantage of such omission and claim that the judgment should be reversed, because the question of fact ought to have been submitted to the jury, unless they specially requested such submission. But if the judge incorrectly charges the law to the jury, and such error may have injuriously affected the party and he has excepted thereto, he need *281 not, in order to place himself in position to correct that error, request the judge to charge 'correct propositions which are antagonistic to his charge, nor request him to submit matters of fact to the jury.
• Such is the position of. the present plaintiff. The judge charged the jury, as matter of law, that if a certain agreement was made, the defendants were entitled to a verdict. This was clearly erroneous. Although he also charged them, that in a certain other event, the defendants would also be entitled to a verdict, and this latter charge may perhaps be correct, yet as it is impossible to say but that the verdict was rendered solely upon the erroneous charge, the plaintiff was injuriously affected by it, and is consequently entitled to a new trial, (Sayre v. Townsend, 15 Wend. 647,) unless upon the undisputed facts either both the first and second, or both the first and third, or the fourth alone, of the questions mentioned in the statement of the case, or arising on the trial, can be answered affirmatively.
First, then, does the evidence establish that the handing of the deed to Wetmore operated as a delivery thereof as his deed by Houghton, for the use of Anthony, with intent to pass the title to Anthony ?
Under the evidence in this case, there was no such delivery until at least sometime in September, 1854. The question of delivery, involving acceptance, is always one of intention, depending on the circumstances of the transaction. (Brackett v. Barney, 28 N. Y. Rep. at p. 340.) It is true that the mere handing of a deed to the grantee or his agent authorized to receive it, is presumptive evidence of an intent to deliver it, so as to take effect instanter as the deed of the grantor; but this presumption may be overcome by attendant circumstances.
In this case, assuming that Wetmore was authorized to receive the deed for Anthony, yet all the attendant circumstances are repugnant to the presumption of an intent on the part of Charles W. Houghton to deliver it to the grantee as his deed. Wetmore was the attorney of Anthony to *282 examine the title, and was employed by Houghton to draw the deed. He was thus cognizant of the ternas on which the deed was to be delivered and accepted, and must be regarded as acting for both parties in the matter. This is evident from his testimony, and is by no means an unusual thing. If Anthony had furnished him with the consideration, there can be no doubt, that he would have considered himself authorized and would in fact have had authority (there being no proof to limit the effect of entrusting him with the papers which were to be mutually delivered) to close the transaction. But in doing so, he would be acting as the agent of Houghton in delivering the deed and receiving the consideration, and as the agent of Anthony in receiving the deed and paying the consideration. Thus until he did some unequivocal act showing, that he had delivered and received as the act of the one, and received and paid as the act of the other, he must be regarded as holding the deed as the agent of the one, and the consideration as the agent of the other. As in this case Wetmore did no such unequivocal act, until somewhere about September 13, 1854, (if he did any then, since it is not clear but that he returned the deed to the grantor,) he must be regarded (even if he had authority from Anthony to receive the deed as his agent as holding the deed, up to that time, as the agent of Houghton, for him and his use, and not as agent for Anthony, or for him or his use. There is nothing in the evidence showing that Wetmore had authority to receive the deed for Anthony as his agent. Bo express authority was given him; he was not furnished with the consideration to be paid on delivery; and no such authority can be implied from his mere retainer to examine the title.
As the grantor had' employed the attorney to draw the deed, and as when he handed it to the attorney properly signed and acknowledged, he did not receive the consideration, the only possible inference from his act of handing to, and leaving the deed with, the attorney under these eircum *283 stances, in the absence of any evidence of instructions given at the time, is that he left the deed with the attorney as his agent to deliver on payment of the consideration.
The acts of the grantor (Houghton) and the attorney (Wetmore) show, that such was the intent of the grantor in this case, and that it was never contemplated, that the leaving the deed with Wetmore was a delivery thereof, for the use of, and with the intent to pass the title to, the grantee, or that Wetmore was authorized to accept the deed, as agent for the grantee, or that he did, in fact, accept it for him as his agent. Wetmore says he could not close the transaction, and did not record the deed, because Anthony was out of town, and the consideration had not been placed in his possession, while he says if the consideration had been placed in his hands, he would have deemed himself at liberty to close without Anthony’s presence. This is equivalent to saying that, in his view, he held the deed, as the agent of the grantor, only to be delivered in the event of the grantee’s performing, as a condition of delivery, his -part of the agreement. Therefore we find that Wetmore did not, in his capacity as agent of Anthony, record the deed. It is suggested that the neglect to record arose from oversight or .negligence; but his evidence refutes this. He says, in effect, that Anthony being absent, and not having left with him the consideration, he could not close the matter and record the deed. Why ? Evidently because, not having the consideration in his hands, he could not fulfill his obligation to Houghton, to receive the consideration before delivering the deed. If he had been acting solely as agent for Anthony, and in no respect for Houghton, and assuming the deed to he left with him with intent to deliver it to Anthony, so as to pass the title, there would have been no necessity for waiting until Anthony’s return.
So, too, the acts of Houghton himself show that the leaving of the deed with Wetmore was not intended as a delivery to Anthony with intent to pass title to him. *284 When Anthony refused to accept the deed, and carry out the arrangement, and proceeded with his attachment on the Rhode Island property, we do not find Houghton claiming that he had performed his part of the agreement, and transferred the title to the Hew York property, and insisting that Anthony should perform his; but he conceded the validity of the objection arising out of the recovery of the judgment, and induced Anthony to take the deed, without paying any consideration therefor, as a mere conduit to pass the title to his (Houghton’s) brothers, without any consideration paid to Anthony.
It may be laid down as a sound proposition, that where a grantee employs an attorney to examine the title, and the grantor employs the same attorney to draw the deed, the mere handing by the grantor of the deed, executed and acknowledged, to the attorney, the consideration not having been paid, cannot be regarded as a delivery to the attorney for the use of the grantee with intent to pass the title, but, at most, it only constitutes the attorney the agent of the grantor to make a delivery upon payment of the consideration, as a condition for the delivery. True, the attorney may violate his duty to the grantor, and deliver the deed to the grantee, without insisting on the performance of the condition; and such delivery may, perhaps, from the time it is actually made, take effect against the grantor; but the law will indulge in no fiction to create a delivery contrary to the duty of the attorney, but, on the contrary, will require it to be evidenced by some unequivocal act. The grantor may, however, when he hands the deed to the attorney, either qualify that act by informing the attorney that he only deposits it for safe keeping until he, the grantor, delivers it personally; or may make it a present delivery of the deed for the use of the grantee with intent to pass the title to the grantee, before receiving the consideration, by so expressly declaring to and instructing the attorney.
In the present case, the evidence shows no express instructions or declarations to the attorney. It only shows *285 a bare handing of the deed to the attorney. Under the proposition above laid down, the evidence clearly shows no delivery of the deed until some time after the docketing of the judgment in question.
.There not having been any delivery prior to September, of course there could be no acceptance prior to that time, and for the same reason the delivery and acceptance in September, could not relate back to the time when the deed was left with Wetmore.
The first three questions, then, must be answered in the negative. How stands it in regard to the fourth ?
I do not deem it necessary to enter into an inquiry as to what would be the relative rights of the plaintiff and defendants, if the defendants were in possession under the agreement between Houghton and Anthony, or wider a title derived through a deed delivered pursuant to that agreement, because, under the evidence, they are not in possession under either that agreement'or such title. The agreement was abandoned by both of the parties to it, and the deed from Houghton to Anthony was clearly never delivered, nor accepted, pursuant to that agreement,» but was used as a mere conduit to pass the title from the judgment debtor to his brothers, for his benefit, with the design ■to avoid, if possible, the effect of the judgment.
There never was the slightest act done, under this agreement, that would justify a court in giving any one an equitable lien upon it. Indeed, as the evidence does not. show that the defendants ever knew of the agreement, or acted on the faith of it, it is difficult' to perceive how they can claim, that by reason of the fact of its having once existed, they have a superior equity over the plaintiff. They certainly have no such equity, on the ground of having acted on it, nor can they claim that such an equity has passed to them from either Anthony or the brothers of the judgment debtor, for they manifestly had no equitable rights to pass.
*286 The error of the judge in charging the jury the first proposition in his charge is therefore not cured, and for that error the judgment must be reversed.
Nor is the second poposition charged, accurate. Admitting that Carnes acted for Houghton, and took the assignment for his use, still he had a right to hold it as a valid security for the money which he advanced, on its purchase, and in case of non-payment of that money by Houghton, to enforce the judgment against any property on which it was a lien. (Harbeck v. Vanderbilt, 20 N. Y. Rep. 395.) In this aspect Houghton, and perhaps the defendants through him, may have a claim for the proceeds of the sale on the execution, over and above the sum necessary to reimburse Carnes, or may perhaps have a claim in equity to have the land reconveyed upon making such reimbursement. If he has either of these claims, he cannot urge them as the case stands. The first would clearly be no defense to this action to recover possession, and the second can only be enforced in equity, or perhaps in this action by setting forth the facts in the answer and claiming the equitable relief sought.
In concluding, as the point may possibly arise on the new trial, it will be well to pass on the exception taken to the decision sustaining the objections to the three questions referred to in the statement of the ease. The first two questions are clearly admissible, under the case of Sweet v. Tuttle, (14 N. Y. Rep. 465.) The evidence proposed to be elicited by the third question was immaterial. The manner in which the witness became possessed of the knowL edge that the judgment was a lien on real estate would throw no light on the question as to who he was acting for in procuring the assignment. Perhaps if followed up by questions founded on what the counsel supposed would be the answer to this one, its materiality might have appeared. As it was not so followed up, we must assume that counsel proposed to drop the subject on receiving an answer to the question; since the answer to this question, whatever it *287 may have been, would not have assisted the jury in arriving at a conclusion on the question presented for their determination. The question was properly overruled, as calling for immaterial testimony.
Judgment reversed, and new trial ordered, with costs to the appellant to abide the event.