has ever been made.    It is the ward's own fault if, under our statute
of limitation, it is now too late to make the attack.    His neglect to
assail the judgment has amounted to a ratification of it.    The guard-
ian's sureties during all these years have had a right to rely upon the
judgment of the supreme court as the true measure of the respective
rights of the father and son in the fund, and they are now entitled to
its protection.    They will be bound by the decree which is to be en-
tered in this proceeding so far as it shall determine the amount of the
ward's property which is, or ought to be, in the hands of the guardian.
Altman v. Hofeller, 152 N. Y. 503, 46 N. E. 961.    The fact that the
guardian received the funds as such guardian did not lessen his right
to their use during his life.    In re Camp, 126 N. Y. 377, 27 N. E. 799.
It must be held, therefore, that the guardian has been entitled to the
income from the fund in question since he received it, and will be en-
titled to such income during his life.    Under the authority of the
Camp matter, above cited, the guardian cannot, in this proceeding, be
compelled to pay the fund over to the ward, unless he sees fit to con-
sent thereto; nor, unless such consent is given, can this court make
any direction requiring him to pay over the fund to a suitable trustee,
even though the loss of the fund by the accounting guardian is con-
fessed.    To accomplish a transfer of the fund to a proper custodian, in
the absence of such a consent, resort must be had to a court of general
jurisdiction.    It is assumed that the guardian stands ready to file
such consent.    If he does so before the decree is entered herein, the
decree will direct him to pay over to his former ward the balance of
the principal in his hands, $638.56.    If such consent is not filed, the
decree will adjudge the amount of principal belonging to said infant
in the hands of the guardian to be said sum of $638.56, without prej-
udice to such further action or proceeding, relating to the custody of
said fund, as may be advised.    The ward and the executor of the de-
ceased surety, Mowry, are each allowed costs of this proceeding against
the petitioner.

  A decree may be entered on two days' notice.    Decreed accordingly.

---

### TRENCKMAN v. SCHNEIDER.

(City Court of New York, General Term.    March 28, 1899.)

1. TENANT'S PERMISSION TO USE STEAM—PRESUMPTION.
        In connection with a tenant's permission to tap a steam pipe to heat
    an office, the right cannot be presumed to recklessly waste the heat and
    power by exhausting the live steam, after use, into a drip sewer.

2. SAME—CONVERSION—INSTRUCTIONS.
        In an action for conversion of steam by a tenant who had permission
    to tap a steam pipe to heat an office, it was error to instruct that they
    need not consider the value of the steam, or expert testimony relating
    thereto.

3. SAME.
        In an action for a tenant's wrongful conversion of steam, in which the
    covenants of the lease were not in issue, it was improper to instruct the
    jury to "consider the case from the standpoint of landlord and tenant
    as to what any two men under similar circumstances would do," since
    it introduced a matter of speculation for their consideration, which may
    have induced them to disregard the evidence.

Appeal from trial term.

Action by August Trenckman against Minnie L. Schneider. Judgment for defendant, and plaintiff appeals. Reversed.

Argued before FITZSIMONS, C. J., and McCARTHY and HASCALL, JJ.

E. S. Clinch, for appellant.

Theo. Sutro, for respondent.

HASCALL, J. It is evident, from a reading of the case, that error was committed in the charge to the jury in statements of fact not borne out by the testimony, and also that the verdict is against the weight of evidence. Assuming that the plaintiff gave defendant the right to take live steam, clearly it does not appear that he conferred the option to take from and tap the main pipe for the purpose of heating defendant's office. If such permission were given, it could not be presumed that it was coupled with the right, for convenience sake, or otherwise, to exhaust the live steam, after use.. into a drip sewer, which would be clearly a reckless waste of heat and power, as the testimony shows. It was proper for the jury to have left to its consideration, by the court, whether defendant were not liable for wasteful use; and the charge that the jury need not consider the value of the steam, nor any of the expert testimony, was error. It having already been established by the appellate court (45 N. Y. Supp. 411) that the covenants of the lease existing between the parties were not in issue, it was not proper to submit to the jury the proposition, "Consider the case from the standpoint of landlord and tenant as to what any two men under similar circumstances. would do." This introduced speculation into the consideration of the jury, and it may not be said that that did not produce its verdict, as. against the evidence. 20 Misc. Rep. 226, 45 N. Y. Supp. 411; Sayre v. Townsend, 15 Wend. 647. The questions for the jury to determine were whether the tapping of the pipe was with plaintiff's knowledge and consent, and, if it were not, then how much was plaintiff entitled to recover for steam used. The jury may naturally have been induced, by the statement of the court, to speculate upon all the contingencies of relationship between landlord and tenant "in similar circumstances," and not been guided at all by the evidence.

Judgment and order appealed from reversed, and new trial ordered, with costs. All concur.